Concurring opinion issued July 28, 2015



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00470-CV

_____

**ENTERGY CORPORATION, ENTERGY SERVICES, INC., ENTERGY POWER, INC., ENTERGY POWER MARKETING CORPORATION, ENTERGY ARKANSAS, INC., AND ENTERGY TEXAS, INC., Appellants**

**V.**

**DAVID JENKINS, GEORGE W. STRONG, FRANCIS N. GANS, AND GARY M. GANS, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, Appellees**

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case No. CV20666

## CONCURRING O P I N I O N

I concur in the judgment of this Court, but write separately because I believe that FERC's exclusive jurisdiction has expanded since *Jenkins I* was decided and now encompasses the dispute before us.

## FERC's Jurisdiction

Under the Federal Power Act ("FPA"), FERC has exclusive jurisdiction of the wholesale sale or transmission of electricity in interstate commerce. *See* 16 U.S.C. § 824(a), (b)(1); *Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 539 U.S. 39, 41 (2003). FERC's jurisdiction encompasses the determination of just and reasonable rates—including all classifications, practices, regulations, and contracts affecting rates, as well as the authority to hear complaints that an existing rate (or associated charge, classification, rule, regulation, practice or contract) is unjust, unreasonable, unduly discriminatory or preferential. *See* 16 U.S.C. §§ 824d, 824e. Many aspects of the interstate "transmission" or "sale" of wholesale energy fall within FERC's exclusive jurisdiction. *See Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 802 (Tex. App.—Corpus Christi 2006, pet. denied) ("*Jenkins I*"). One such aspect over which FERC exercises its jurisdiction is power allocation that affects wholesale rates. *See Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 371 (1988).

The *Jenkins I* court considered Entergy's argument that FERC jurisdiction was exclusive because the federal tariff at issue—the Entergy Systems Agreement

("ESA")—provided a centralized control mechanism for purchases of power by the participating Entergy companies. *See Jenkins*, 187 S.W.3d at 802. The court reviewed the portions of the agreement cited by Entergy which reflected the following: (1) the companies, with the consent of or under conditions specified by the operating committee, may agree to purchase capacity or energy from outside sources and if purchased by the operating company, shall be allocated amongst the companies in any manner mutually agreeable to them; (2) the operating committee may purchase energy under economic dispatch or emergency conditions; (3) the operating committee is to ensure the continuous supply or capacity of energy, provide for and coordinate safe dispatching, the proper distribution of reserves, coordinate negotiations for the interchange and sale of power and energy, including the sale and delivery to others on a profitable basis of power and energy not required for system purposes, and to secure power from external sources as may be required or will result in savings to the companies; and (4) the operating committee shall determine availability of energy for purchase from or sale to outside systems in an economical manner. *See id.* at 806. The court then concluded that the system allowed the broad exercise of discretion and that "FERC has specifically declined to consider the prudency or wisdom of a purchaser's choices between available power supply options, or whether a purchaser 'has made the best deal available.'" *Id.* (citing *Pa. Power and Light Co.*, 23 FERC ¶ 61,325

3

at 61,716 (1983) and *Cent. Vt. Pub. Serv. Corp.*, 84 FERC ¶ 61,194 at 61,975 (1998)).

In the cited case, *Pennsylvania Power and Light Co.*, FERC stated, with respect to its own jurisdiction, "We do not view our responsibilities under the Federal Power Act as including a determination that the purchaser has purchased wisely or has made the best deal available." *Pa. Power & Light Co.*, 23 FERC ¶ 61,325 at 61,716 (1983). The *Jenkins I* court also referred to *Central Vermont Public Service Corp.*, in which the Commission cited *Pennsylvania Power and Light Co.* and noted that "[FERC] has consistently recognized that wholesale ratemaking does not, as a general matter, determine whether a purchaser has prudently chosen from among available supply options." *Cent. Vt. Pub. Serv. Corp.*, 84 FERC ¶ 61,194 at 61,975 (1998) (citing *Pa. Power & Light Co.*, 23 FERC ¶ 61,325 at 61,716). Noting that "[t]hat is exactly what appears to be in issue here," the *Jenkins I* court concluded that FERC had not exercised jurisdiction over this case. *Jenkins*, 187 S.W.3d at 805, 807.

However, in the years since *Jenkins I* was decided, FERC has begun to exercise its jurisdiction over complaints that Entergy imprudently operated its centralized purchasing system by relying on its own power generation rather than purchasing cheaper power from third parties. *See Entergy Servs. Inc.*, 128 FERC ¶ 63,015 (2009), *aff'd in part, rev'd in part*, 137 FERC ¶ 61,029 (2011); *Entergy*

4

*Servs. Inc.*, 124 FERC ¶ 63,026 (2008), *aff'd in part, rev'd in part*, 130 FERC ¶ 61,023 (2010), *La. Pub. Serv. Comm'n v. Entergy Corp.*, 139 FERC ¶ 61,240 (2012). These regulatory decisions are the "changed circumstances" that plaintiffs acknowledged might cause state court jurisdiction to give way.[1] They also address the statement in *Jenkins I* that FERC has "declined to consider the prudency or wisdom of a purchaser's choices between available power supply options . . . ." *Jenkins*, 187 S.W.3d at 806.

In *Entergy Services, Inc.*, 128 FERC ¶ 63,015 (2009), *aff'd in part, rev'd in part*, 137 FERC ¶ 61,029 (2011), the Commission considered, among other issues, whether Entergy had "imprudently established [its] minimum capacity generation levels for its generating units for making commitment and dispatch that exceed actual minimum capacity values, thus decreasing the potential savings from off-system purchases from merchants . . . ." *Id.* at ¶¶ 178–84. In its ruling on the issue, FERC stated:

> As noted above, in its initial evidentiary filing, the Louisiana [Public Service Commission] raised the possibility that Entergy was not operating its generation units in a prudent manner. Entergy responded by explaining why its operations were prudent. At the hearing, [] the Louisiana PSC witness who first questioned Entergy's operation,

---

[1]    In its Brief for Respondents in Opposition to Petitioners' Application for Writ of Certiorari to the United States Supreme Court, Jenkins stated, "Thus, it appears that, if petitioners were to seek a FERC determination that respondents' complaint raises matters within its jurisdiction, and FERC decided to address those questions, state court jurisdiction might ultimately give way."

testified that he could find no evidence supporting his initial allegation
. . . .

In view of the above, I find that the Louisiana PSC failed to carry its burden of proof on this issue.

*Id.* at ¶¶ 183–184.

Jenkins argues that because Louisiana PSC failed to present evidence and FERC made no findings on the issue, this case "does not reach, much less cover, [Jenkins's] claims." The fact that FERC found that Louisiana PSC had failed to carry its burden of proof before it is an evidentiary finding. The Commission's consideration of the issue and subsequent ruling constitute an exercise of FERC's jurisdiction over Entergy's decisions to generate or purchase power from third parties—the very decisions at issue here.

In *Entergy Services Inc.*, 124 FERC ¶ 63,026 (2008), *aff'd in part, rev'd in part*, 130 FERC ¶ 61,023 (2010), the Commission considered Louisiana PSC's claim that Entergy had acted imprudently in deciding not to purchase one of its generation units. *See id.* at ¶ 280. The administrative law judge ("ALJ") found that Louisiana PSC had failed to raise serious doubts of imprudence and that, even if it had, Entergy's evidence rebutted that position and established that "Entergy has reasonably operated its system so as to minimize production costs, and to maintain reliability . . . ." *Id.* at ¶ 317.

In its brief, Jenkins first notes that Entergy failed to cite the subsequent opinion in which the full Commission rejected Entergy's request that the ALJ's general finding regarding Entergy's purchasing decisions bar prudence claims raised in the future.[2] Jenkins then concludes that the original decision "does not affect any of the *Jenkins* [*I*] court's conclusions." However, this FERC decision explicitly addresses the Entergy System's purchasing decisions. The Commission determined that Louisiana PSC had failed to satisfy its evidentiary burden which bears directly on the issue of whether FERC has exercised jurisdiction over the subject matter. This case is another instance in which FERC has asserted its jurisdiction over Entergy's purchasing practices and the prudence of its decisions—the very subject matter of Jenkins's claims.

In a third case, *Louisiana Public Service Commission v. Entergy Corp.*, 139 FERC ¶ 61,240 (2012), FERC considered a complaint that an Entergy company had engaged in imprudent conduct by selling inexpensive Entergy-generated power to third-party marketers. *Id.* at ¶ 1–2. The ALJ found that the company had acted imprudently, in violation of the ESA, and ordered refunds. *See id.* This decision is

---

[2] In the Initial Decision, the ALJ found that Entergy "historically has generally purchased power, including economy energy, from third parties instead of running its own facilities when it is economic to do so and is consistent with operational and reliability requirement[s]." *Id.* at ¶ 668 (footnote omitted). The full Commission subsequently rejected Entergy's request that it find future prudence claims barred by res judicata. *Entergy Servs., Inc.*, 130 FERC ¶ 61,023, at ¶ 70.

another example of FERC exercising its jurisdiction over claims that Entergy engaged in imprudent operating practices.[3]

The *Jenkins I* court presciently recognized that "FERC jurisdiction could potentially expand to encompass this dispute . . . ." *Jenkins*, 187 S.W.3d at 807. In light of the decisions discussed above, it is clear that it has done so. If FERC exercises jurisdiction over a particular issue, then under the FPA regulatory scheme, it has exclusive jurisdiction. *See Miss. Power & Light Co.*, 487 U.S. at 374, 108 S. Ct. at 2440 (concluding states may not regulate in areas where FERC has properly exercised its jurisdiction to determine just and reasonable wholesale rates or to insure that agreements affecting wholesale rates are reasonable). Given these changed circumstances, we are not bound to follow the decision in *Jenkins I*. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). I believe these decisions demonstrate that FERC has preemptive jurisdiction over Jenkins's claims. Accordingly, I join the majority opinion.

---

[3]     Jenkins points out that, during the proceedings of that case, Entergy argued that the matters at issue did not raise the same issues as those before the Louisiana PSC in *Delaney v. Entergy Louisiana, Inc.*, Docket No. U-23366 (La. P.S.C. 2000), in which Louisiana asserted claims similar to Jenkins's claims here. Jenkins then notes that FERC agreed with Entergy, and that FERC's discussion of *Delaney*, which included no criticism of Louisiana's exercise of jurisdiction in that case, "is clear evidence that claims like Plaintiffs' in this case bear no relevance to the proceedings before FERC." The *Delaney* decision was issued in 2000—six years before *Jenkins I* and well before the FERC decisions discussed here.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Justice Lloyd, concurring.